UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATHANIEL WOODS,<br><br>               Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Case No. C24-1874-SKV<br><br>ORDER REVERSING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1965, has a high school education, and, in the past, worked as an industrial truck operator and injection molding machine tender. *See* AR 27, 221, 226.

On October 19, 2018, Plaintiff protectively applied for benefits, alleging disability as of October 5, 2017. AR 161-75. His applications were denied initially and on reconsideration and

an ALJ held a hearing on October 14, 2020. AR 36-62. On December 1, 2020, the ALJ issued a partially favorable decision, finding Plaintiff disabled as of August 9, 2020, when he suffered a cerebrovascular accident, but not disabled prior to that date. AR 16-30.

The Appeal Council denied Plaintiff's request for review on August 13, 2021. AR 1-5. Plaintiff filed suit and this Court, by Order dated May 27, 2022, reversed and remanded the ALJ's decision for further administrative proceedings. AR 2443-46.

On June 12, 2024, Plaintiff appeared at a second hearing. AR 2384-2408. On July 15, 2024, an ALJ issued a decision again finding Plaintiff not disabled since his October 5, 2017 alleged onset date through August 8, 2020. AR 2365-76.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since October 5, 2017.

**Step two**: Plaintiff has the following severe impairments: lumbar degenerative disc disease, depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and alcohol dependence.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**: Plaintiff can perform medium work, except that he can occasionally use ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; understand and remember simple instructions; maintain attention, concentration, and pace for simple tasks; tolerate occasional contact with coworkers and the public and occasional supervisory contact other than periods of instruction (initial training and explanation of changes to job routine or tasks); make simple work-related decisions; adjust to occasional changes consistent with simple tasks; and perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota.

**Step four**: Plaintiff has no past relevant work.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 2

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 2365-76.

Plaintiff appealed this final decision of the Commissioner to this Court. Dkt. 1. The parties consented to proceed before the undersigned Magistrate Judge. Dkt. 3.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

# DISCUSSION

Plaintiff argues the ALJ erred in his consideration of medical opinions and requests remand for an award of benefits. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

### A. The ALJ Erred in Assessing a Medical Opinion

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). The "supportability" factor addresses the relevance of the objective evidence presented in support of an opinion, as well as the "supporting explanations" provided by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The "consistency" factor examines the consistency of the opinion with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more consistent an opinion is with that other evidence, the more persuasive it will be. *Id*. An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

#### 1. *Dr. David Widlan*

Dr. David Widlan completed a psychological/psychiatric evaluation of Plaintiff on behalf of the Washington State Department of Social and Health Services (DSHS) on August 23, 2018. AR 310-13. Dr. Widlan identified the symptoms affecting Plaintiff's ability to work as depression, described as "lack of energy/motivation, irritability, general dysphoria, sleep" and rated "severe", and anxiety, described as "[s]tartle, vigilance, nightmares, intrusive thoughts" and rated "marked." AR 311. He diagnosed PTSD, onset military, and major depressive disorder, recurrent, moderate to severe with psychotic features. *Id*. He assessed, *inter alia*, marked

1  limitations in the ability to understand, remember, and persist in tasks following detailed
2  instructions, learning new tasks, adapting to changes in a routine work setting, communicating
3  and performing effectively in a work setting, and completing a normal work day and week
4  without interruptions from psychologically based symptoms, and an overall severity rating of
5  marked.  AR 312.

6  The ALJ noted that Dr. Widlan's report indicated Plaintiff complained of "10/10" chronic
7  depression since separating from his wife in the 1990s, that he had experienced chronic
8  nightmares since he was exposed to trauma when in the Navy during the 1980s, and complained
9  of "'some difficulty'" using the bus due to anxiety.  AR 2372 (citing AR 310-11).  Also, on
10 mental status examination (MSE), Plaintiff had a restricted affect, was unable to count
11 backwards by three or sevens, had difficulty with a complex trail making task, and was only able
12 to repeat two digits backward, but was able to repeat five digits forward, follow a three-step
13 command, recall three of three objects immediately and after a delay, was fully oriented, and
14 displayed a normal fund of knowledge, speech, thought process, and content.  *Id*. (citing AR 312-
15 13).

16 The ALJ provided the following reasons for finding Dr. Widlan's opinion not persuasive.
17 AR 2374.  Dr. Widlan supported his opinion with a discussion of his examination findings, but
18 based his opinion on a single examination and his opinion was not consistent with the "greater
19 record."  *Id*.  There is no indication Plaintiff was in treatment at the time Dr. Widlan conducted
20 his examination.  The numerous marked limitations identified are inconsistent with the opinions
21 of Bruce Eather, Ph.D., and Kent Reade, Ph.D., who examined the record on behalf of the State
22 agency, and inconsistent with the claimant's numerous reports of work activity during the period
23 at issue, including his contemporaneous report that he was working eight hours a day.  *Id*. (citing

ORDER REVERSING THE COMMISSIONER'S
DECISION - 5

AR 424). The marked limitations are also inconsistent with Plaintiff's regular unremarkable presentation during his examinations. *Id.* (citing 401-02, 428, 448, 467, 482, 487, 512, 525, 539, 583, 613, 785, 792, 803, 810, 814, 851, 884, 895, 902, 909, 922, 1021, 1031).

Neither the mere fact of the single examination, nor the observation as to treatment suffices as a basis to reject Dr. Widlan's opinion. Social Security regulations recognize that "[a] medical source may have a better understanding of [a claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder." 20 C.F.R. §§ 404.1520c(3)(v), 416.920c(3)(v). In this case, Dr. Widlan provided the only medical opinion addressing Plaintiff's mental impairments based on an examination. There is further no indication the ALJ considered relevant evidence associated with Plaintiff's treatment, including the fact that he was waiting to be assigned a new psychiatrist through the Veteran's Administration (VA), had reported a prior history of avoiding treatment for his PTSD, and was using medications to treat his mental impairments. *See, e.g.*, AR 464 (April 24, 2018: "Veteran is actively enrolled in the Home Telehealth program."; noting treating physician had retired and needed to select new provider); AR 396 (December 13, 2018: "Veteran reports that he is waiting for MH clinic to assign him new psychiatrist. Veteran would like access to medication that help with alleviating nightmares related to PTSD."); AR 808-11 (January 18, 2019: first appointment with new psychiatrist in which plaintiff reported a "long history of avoidance and living with ptsd symptoms" and psychiatrist recommended increase in medication for frequent severe nightmares and continued use of other mental health-related medication).

The Court also finds an absence of substantial evidence support for the ALJ's inconsistency findings. It should be noted, as an initial matter, that the ALJ found the opinions of Drs. Eather and Reade only partially persuasive, recognizing that the record was more

consistent with moderate social limitations, rather than the mild limitations assessed, and acknowledging that aspects of their opinions were vague. *See* AR 66-67, 72-73, 79-80, 87 (opining Plaintiff would experience intermittent interruptions from symptoms but was "capable of remaining on task enough of the time in order to complete work assignments within an acceptable time frame[,]" and would "have some difficulty with criticism from supervisors, but is capable of making adjustments."), and AR 2373 (finding opinions vague in failing to quantify what was intended by the phrases "'acceptable time frame'" or "'some difficulty'").

In addition, the record shows Plaintiff's ongoing efforts to obtain, but inability to sustain employment, and the temporary, inconsistent, and/or part-time nature of the work activity. *See, e.g.*, AR 346 (November 14, 2017: reporting as long term goal, "Steady employment; Last year had 5 w2 forms."); AR 445 (May 31, 2018: "has trouble holding jobs"); AR 336 (October 11, 2018: "work location changes daily"); AR 407 (December 4, 2018: reporting reduced work hours, "'slow season'" at work, and interest in pursuing alternate job opportunities if current employment continued to not provide enough hours); AR 813-14 (January 3, 2019: often works only about thirteen hours a week and only learns work was canceled after arriving); AR 805 (January 24, 2019: applying for a job and "has been frustrated with lack of hours offered at current employment"). In fact, on October 29, 2018, not long after Dr. Widlan's examination, Plaintiff reported he had not gone to work "because there was no work", that it was not always full-time, and that "he is called in when work is available[.]" AR 335.

The record also contains work activity-related evidence consistent with Plaintiff's report to Dr. Widlan that he "loses his temper easily", and Dr. Widlan's assessment of marked limitations in the ability to adapt to changes, communicate and perform effectively, and complete a normal work day and week without interruption from symptoms. *See, e.g.*, AR 716 (July 12,

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

2017: "Veteran reported that he was fired from his job in Detroit, and moved to Seattle for a 'new beginning' about 1 [month] ago.  Veteran reported challenges with controlling his anger, possible trauma-related [symptoms], and employment and housing concerns[.]"); AR 692 (August 1, 2017: "Veteran reported that he has been working an afternoon shift at the milk plant, but got into a 'big hoopla' last week and ended up yelling at his coworker and supervisors, which he stated is a common problem for him. . . . Veteran reported long [history] of anger challenges and wonders if trauma exposure has contributed to [symptoms]."); AR 620 (October 26, 2017:  fired from job following "'verbal altercation'" with supervisor); AR 341 (December 5, 2017: "Has a job in which he has already experienced discord - a problem that has plagued him since leaving the service.  He relates that traumatic experiences in the Persian Gulf have changed him:  he now has 'anger issues', trouble with authority, poor sleep with nightmares, moodiness, etc.").  The evidence, considered as a whole, undermines the ALJ's finding of inconsistency with the marked limitations assessed by Dr. Widlan.[3]

        The Court, finally, addresses the finding of inconsistency with the medical record.  The ALJ failed to explain or provide any citations in support of her finding of inconsistency with the "greater record."  AR 2374.  She did, on the other hand, provide support for her finding of inconsistency with MSEs.  *See id*.  However, in previously considering the same inconsistency finding, this Court stated that, while the MSE findings of record and Dr. Widlan's findings are similar, Dr. Widlan "did not state or imply Plaintiff is disabled based on his MSE findings" and, rather, based his opinions on the severity of Plaintiff's depression and anxiety, as evidenced in

---

[3] Earlier in the decision, the ALJ discussed the evidence of Plaintiff's work activity during the relevant time period and found that it did not rise to the level of substantial gainful activity, AR 2367-88, but was not entirely consistent with Plaintiff's allegations of an inability to work, AR 2372-73.  Plaintiff here asserts, and the Court therefore addresses, only the error alleged in relation to the opinion of Dr. Widlan.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 8

standardized testing he performed which yielded depression and anxiety scores in the "severe range" and "which cause symptoms that are not necessarily addressed in a MSE result." AR 2445; *see also* AR 313 (identifying Plaintiff's mood as "[d]epression" and supported by Beck Depression Inventory (BDI) and Beck Anxiety Inventory (BAI) scores of 36 and 43 respectively); AR 2444 (also finding in relation to prior ALJ decision: "The 'normal' exam findings the [ALJ] noted may indicate Plaintiff does not have severe or marked cognitive limits, but the exam findings do not account for or contradict other limitations caused by depression and anxiety."). In the decision now under review, the ALJ again points solely to MSE findings. *See* AR 2372, 2374. The Court, with consideration of the evidence from Dr. Widlan and the record as a whole, finds an absence of substantial evidence support for this finding of inconsistency. *See, e.g.,* AR 648 (October 13, 2017: "Identified need: I am struggling with managing anger and irritability."); AR 607-08 (November 1, 2017: reporting "drinking most days since being laid off" and MSE reflecting constricted affect and alienated, perplexed, unsettled, flustered mood); AR 547-48 (December 28, 2017: MSE results included constricted affect and alienated, skeptical, flustered mood; provider noted report of "somatic concerns as well as memory/ concentration issues", issues with alcohol, reduction in nightmares with medication but "trouble getting to sleep, 'thinking too much' - reviewing slights/resentments, etc.", and prescribed medication for "obsessing/ruminating/insomnia"); AR 809-10 (January 18, 2019: Plaintiff endorsed frequent severe nightmares every night, causing him to wake up covered in sweat and go "through several pillows", difficulty getting back to sleep, and little help from medication; reporting "most significant symptom that's difficult to manage is his anger and his 'personality[,]'" that he struggles with aggression, and that his "anger issues" have "resulted in difficulty keeping jobs throughout the years."); AR 1034-36 (January 23, 2020: Plaintiff

ORDER REVERSING THE COMMISSIONER'S
DECISION - 9

reflected on difficulty in past with maintaining employment due to PTSD symptoms, "specifically dealing with other people and trying to stay calm and not 'lose it'"; psychiatrist found he "appears to be at his psychiatric baseline with chronic nightmares and back pain that significantly limits his level of functioning[,]" with benefit from medication for mood but not much for nightmares, reported to be chronically severe).  The ALJ, for this reason and for the reasons stated above, erred in considering the opinion of Dr. Widlan.

          2.     *Bruce Eather, Ph.D., and Kent Reade, Ph.D.*

Plaintiff asserts error in the ALJ's failure to explain his preference for the opinions of Drs. Eather and Reade over the opinions of Dr. Widlan.  However, the ALJ properly articulated the persuasiveness of the opinions of Drs. Eather and Reade with respect to supportability and consistency, and reasonably found their opinions only partially persuasive upon finding the record consistent with more moderate social limitations and portions of their opinions vague. Plaintiff does not identify and the Court does not find error in the ALJ's assessment.

**B.**    **Scope of Remand**

In requesting an award of benefits, Plaintiff points to the ALJ's failure to adequately address a medical opinion this Court previously directed the Commissioner to address and which supports a finding of disability, and argues the Commissioner should not be given yet another opportunity to cure the errors.  However, an award of benefits may be warranted only when:  (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues to be resolved and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, there would be no doubt as to disability.  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014), and *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

1101 (9th Cir. 2014)).  A remand for an award of benefits is, moreover, "a rare and prophylactic exception to the well-established ordinary remand rule."  *Id.*  Accordingly, even with satisfaction of the above-described conditions, "it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings."  *Id.*  If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings.  *Treichler*, 775 F.3d at 1105.  *See also Strauss v. Comm'r of Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.")

      Here, outstanding issues remain for the ALJ to resolve.  In particular, the ALJ is tasked with resolving the conflict between the opinions of Dr. Widlan and Drs. Eather and Reade, *see Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (quoting *Andrews*, 53 F.3d at 1039), and in formulating an RFC accounting for any limitations assessed by these physicians and accepted by the ALJ, *see* 20 C.F.R. §§ 404.1546(d), 416.946(c); *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.") (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).  Because this unresolved conflict remains and its resolution may implicate the RFC assessed, remand for further proceedings is appropriate.[4]

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42

---

[4] The ALJ may also find it necessary, following reassessment of the evidence, to conduct a drug abuse and alcoholism (DAA) analysis to determine whether disabling limitations remain absent the use of drugs or alcohol.  *See* 20 C.F.R. §§ 404.1535, 416.935.

U.S.C. § 405(g). On remand, the ALJ should reassess the opinion of Dr. Widlan, reweigh other medical opinions and evidence as necessary in light of that reassessment, redetermine the RFC as appropriate, and proceed to the remaining steps of the disability evaluation process.

Dated this 12th day of September, 2025.

*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S
DECISION - 12